UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSHUA MUZUMALA,

               Plaintiff,

-against-

UNKNOWN FEDERAL AGENTS, et al.,

               Defendants.

22-CV-7851 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action asserting claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. §§ 1981, 1983, 1985, and 1986. He alleges that federal agents and others conspired to violate his rights in the States of New York and Louisiana. By order dated January 23, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff brings this action alleging a wide-ranging campaign of harassment and surveillance by private individuals and government actors to deprive him of his rights and have him deported.[1] Named as defendants are: (1) "[u]nknown federal agents" (*id* ¶ 26); (2) John Doe

---

[1] This action is the second of three complaints Plaintiff filed in this court arising from the same events. In the first action, *Muzumala v. Mayorkas*, No. 22-CV-3789 (JGK) (S.D.N.Y. filed May 9, 2022) ("*Muzumala I*"), Plaintiff asserted claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, alleging that the United States Immigration and Customs Enforcement ("ICE") and the Federal Bureau of Investigation ("FBI") failed to adequately respond to his document requests. He also brought statutory and constitutional claims against officials stemming from his belief that private individuals and government agents are trying to have him deported. On June 22, 2022, Judge John G. Koeltl dismissed Plaintiff's claims against the officials and his assertions concerning the government actors' efforts to deport him. *See*

1, "a federal agent most likely from immigration enforcement" (ECF 2, ¶ 25); (3) John Doe 2 and Jane Doe 1 (collectively "Doe couple"), a couple who were Plaintiff's neighbors in New Paltz, New York; (4) John Doe 3, a resident of Brooklyn, New York, "engaged" by John Doe 1 and the unknown federal agents (*id.* ¶28); (5) the University of New Orleans; (6) John Doe 4, a sergeant employed by the University of New Orleans Campus Police; (7) John Doe 5, a police officer employed by the University of New Orleans Campus Police; (8) Neal Maroney, a professor at the University of New Orleans; (9) John Doe 6, an employee of the Bowery Residents' Committee's ("BRC") Boulevard Men's Residence,[2] a homeless shelter in Manhattan; and (10) Susan Brady, a doctor employed by BRC. The following is a summary of the information in the complaint, which is 96 pages long and contains 390 numbered paragraphs.[3]

---

*Muzumala I*, 2022 WL 2916610 (S.D.N.Y. July 22, 2022). Judge Koeltl allowed the FOIA claims to proceed. A motion to dismiss filed by ICE and the FBI is pending in that case.

Plaintiff's third case, filed after submission of this action, is *Muzumala v. The City of New York*, No. 22-CV-8423 (LTS) (S.D.N.Y. filed Oct. 3, 2022) ("*Muzumala III*"). In that action, he asserted constitutional claims under 42 U.S.C. § 1983, arising from his shelter experiences in New York City. On February 21, 2023, the Court dismissed most of the claims, but granted Plaintiff leave to amend. *See Muzumala III*, ECF 1:22-CV-8423, 12. Plaintiff subsequently filed a second amended complaint, which remains pending.

There is some duplication of allegations among Plaintiff's three actions. In all three actions, he describes events occurring in New Paltz, Poughkeepsie, Brooklyn, and New Orleans, involving federal agents and their proxies attempting to have him deported. In both this action and *Muzumala III,* Plaintiff discusses some of the same shelter experiences and names Dr. Susan Brady as a defendant. The Court will not address in this order matters that have been addressed in *Muzumala I* and *Muzumala III*.

[2] BRC is a nonprofit organization that, among other things, manages shelter facilities in partnership with the New York City Department of Homeless Services. *See* https://www.brc.org/ (last visited Aug. 16, 2023); https://www.nyc.gov/site/dhs/about/bowery-residents-committee.page (last visited Aug. 16, 2023).

[3] On February 2, 2023, the Court received a motion from Plaintiff requesting leave to submit an amended complaint. (ECF 10.) On April 10, 2023, the Court denied Plaintiff's motion as unnecessary because he could amend his complaint once as of right within a certain timeline under Rule 15(a) of the Federal Rules of Civil Procedure. (ECF 11.) The Court directed Plaintiff, if he chooses, to submit his amended complaint within 45 days, and that, if he did not file an

3

A.   **Defendants targeted harassment of Plaintiff at the New Paltz Garden Apartments in New Paltz, New York**

Plaintiff, who identifies himself as being "a male of African descent," moved to the United States in 2006, and since then has obtained multiple degrees. (ECF 2, ¶ 8.)[4] In September 2019, Plaintiff moved to New Paltz, New York, to enroll at the State University of New York at New Paltz ("SUNY New Paltz"). Plaintiff lived in an apartment complex close to campus called New Paltz Gardens, where he may have been the only Black resident. He "experienced xenophobia and racial animus" from a couple, John Doe 2 and Jane Doe 1, who lived in the same building. (*Id.* ¶ 10.) The Doe couple expressed their "angst" that Plaintiff had moved into the building by committing "inimical" acts towards him. This included saying that Plaintiff was "weird and sad," playing audio of monkey sounds loudly while "talking about Black people in a disparaging sense," and screaming, "[W]hy are you here?" and "Get out of here." (*Id.* ¶51.) Because of the "ongoing bias incidents" from the couple, Plaintiff asked to be released from his lease, but his request was denied, and instead he was allowed to move to another apartment in a different building within the complex. (*Id.*)

However, the Doe couple's harassment continued. They "influenced residents around Plaintiff's new apartment building and organized proxies to perpetrate the harassment of Plaintiff." (*Id.* ¶ 11.) For example, on his first day in the new apartment, a resident above him screamed, "[S]omebody get the monkey out of here." (*Id.* ¶ 52.) Plaintiff also heard Jane Doe 1 telling residents in the new building, "[W]e had to treat him like shit to get him out." (*Id.*)

---

amended complaint within that time, the Court will treat the original complaint as the operative pleading. (*Id.*) Plaintiff did not file an amended complaint.

[4] The Court quotes the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless otherwise indicated.

Plaintiff believes that the Doe couple "had for some reason become fixated with making [him] uncomfortable in his apartment and in the community." (*Id.*)

In April 2020, at about the time that Plaintiff's application for permanent residency was being processed by the United States Citizenship and Immigration Services, he noticed a change in the tenor of the harassment, as it "had started including intimations that [he] would be deported." (*Id.* ¶ 12.) Plaintiff believes that the Doe couple had involved "immigration enforcement," consisting of John Doe 1 and unknown federal agents, in the harassment "for the purposes of interfering with Plaintiff's petition for permanent residence" and "to try to get [him] removed from the country" (*Id.* ¶¶ 12, 53.) For the next seven months, the harassment escalated, forcing Plaintiff to move to Poughkeepsie, New York, in September 2020, hoping that it would stop.

**B.  Defendants' harassment of Plaintiff continued in Poughkeepsie, New York**

The Doe couple, John Doe 1, the unknown federal agents, and "their proxies tracked and followed" Plaintiff to Poughkeepsie, where they obtained access "under federal authority" to apartments adjacent to Plaintiff's apartment and "would surveil Plaintiff, including, but not limited to casting aspersions about [him], and alleging that [he] was a criminal and was getting deported." (*Id.* ¶¶ 16, 57.) In November 2020, Plaintiff received a positive Covid-19 test and informed his landlord of the test so that his neighbors could be informed. A few days later, Jane Doe 1 with unknown individuals drove into a parking lot adjacent to Plaintiff's apartment and screamed, "[D]ie already," after mentioning details about Plaintiff's Covid test. (*Id.* ¶ 62.)

**C.  Plaintiff moved to Brooklyn, New York, where Defendants' harassment continued**

In December 2020, Plaintiff decided to move to Brooklyn, New York, but all the defendants followed him there and continued the harassment, "[a]t one point, using [a] loudspeaker from an unmarked police car saying, '[Y]ou cannot hide from us.'" (*Id.* ¶ 18.) The

defendants used local residents and their "proxies," including John Doe 3, who would verbally harass Plaintiff, "echoing false allegations that Plaintiff was a criminal and was getting deported." (*Id*. ¶ 69.)

On May 21, 2021, Plaintiff's petition for permanent residency was approved. When the defendants found out about the approval, Plaintiff heard Jane Doe 1 saying, "[W]e will keep doing this until we run him out of the country." (*Id*. ¶ 77.) The defendants "had made pursuing Plaintiff a personal matter and had become excessively obsessed with attempting to have Plaintiff deported from the United States." (*Id*. ¶ 79).

**D.      Defendants tracked and followed Plaintiff to New Orleans, Louisiana**

In June 2021, Plaintiff decided to move to New Orleans, Louisiana, to attend the University of New Orleans, where he had been accepted into a Ph.D. program. Defendants again tracked him down and "repeatedly engaged in a course of conduct that would severely demonize, and defame Plaintiff." (*Id*. ¶ 21.) Defendants escalated their surveillance and harassment of Plaintiff, by (1) using "through-the-wall x-ray surveillance equipment," which caused radiation (*id*. ¶¶ 22, 105); (2) using proxies such as John Doe 4, who Plaintiff heard saying at a desk in the university library, "'[N]obody wants him. He's got to go,' and '[H]e is a weird guy,'" using language similar to language that had been used by John Doe 1, the unknown federal agents, the Doe couple, and their other proxies (*id*. ¶107); (3) "weaponizing surveillance equipment to furtively cause Plaintiff extreme pain and discomfort" (*id*. ¶ 111); and (4) subjecting Plaintiff to "ionizing radiation several times a day" (*id*. ¶ 120). Plaintiff sought assistance from the campus police, but it soon "appeared that university police were doing the bidding of Defendants John Doe 1 and [u]nknown federal agents," including following him around because they "viewed [him] as a safety concern." (*Id*. ¶¶ 102, 104.)

On September 28, 2021, Defendant Neal Maroney, a professor, responded to Plaintiff's attempt to clarify a question in class with "discriminatory and abusive language" by screaming, "[L]et's get rid of this shit." (*Id.* ¶ 124.) This language was consistent with that used by the defendants, and left Plaintiff "feeling out of place, afraid, embarrassed and unwelcome in his class." (*Id.*) Several days later, Maroney, several of Plaintiff's classmates, John Doe 1, and other unidentified individuals gathered in the hallway of a lecture hall at the university. Plaintiff believes they were having a conversation about him, which included using a "viewing device" to look at his brain. (*Id.* ¶ 128.) Plaintiff began "experiencing a severe headache, including pain and a burning sensation on the surface of his head and neck, and feeling extreme weakness in his arms and legs." (*Id.*) Defendants continued to target Plaintiff with "harassment and violence," leaving him "extremely traumatized." (*Id.* ¶¶ 131-141.)

E.   **Plaintiff returned to New York and Defendants followed**

Plaintiff feared for his safety, and on November 10, 2021, he withdrew from the University of New Orleans and returned to New York. Plaintiff sought temporary housing from the City of New York, and was housed in several shelters. However, Defendants had followed him and, in the shelters, continued their harassment, which included (1) using surveillance equipment and ionizing radiation to cause him pain; (2) housing him with roommates who threatened him and exposed him to second hand smoke and illicit substances; (3) conspiring with social service workers to get him to transfer to a mental health and substance abuse facility; (4) tracking and following him to Covid-19 isolation hotels; and (5) "advanc[ing] a false narrative that Plaintiff had a mental illness" (*id.* ¶ 189).

On December 29, 2021, Plaintiff attended a psych evaluation with Defendant Susan Brady, who asked why he was in temporary housing. He informed her of the actions taken against him by the Doe couple, John Doe 1, the unnamed federal agents, and their proxies,

7

"tracking, following, surveilling, and harassing" him, which prevented or made it difficult for him to pursue his "education and employment goals." (*Id*. ¶ 191.) Instead of "identify[ing] the illegal immigration pursuit as the barrier in [his] current circumstances, and begin[ning] the process of addressing it," Defendant Brady diagnosed Plaintiff with schizophrenia. (*Id*. ¶¶ 192, 194.) Plaintiff, who had no history of mental illness, was "shocked, surprised and dismayed by the diagnosis," and decided that it was likely that Defendant Brady had been "influenced by John Doe 1 and the [u]nknown federal agents" in an effort to discredit him and "manufacture aggravating factors" to prevent him from getting future benefits. (*Id*. ¶ 194, 198.) After the diagnosis, Plaintiff was transferred to several mental health and substance abuse facilities, where he continued to face difficulties.

Plaintiff brings this action seeking injunctive relief and money damages.

## DISCUSSION

Under the IFP statute, a court must dismiss an action if it determines that the action is frivolous or malicious. 28 U.S.C. §1915(e)(2)(B)(i). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). A complaint is "'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless' − that is, if they are 'fanciful,' 'fantastic,' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton*, 504 U.S. at 32-33) (finding as frivolous and baseless allegations that set forth a fantastical alternative history of the September 11, 2001 terrorist attacks); *see also Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989) (A claim is frivolous when it "lacks an arguable basis either in law or in fact."); *Livingston*, 141 F.3d at 437("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory."

(internal quotation marks and citation omitted)). Moreover, a court has "no obligation to entertain pure speculation and conjecture." *Gallop*, 642 F.3d at 368.

Plaintiff's complaint is premised upon his belief that, the Doe couple, multiple federal agents, and their proxies mounted a campaign of harassment against him in an effort to have him deported, and then tracked and monitored his activities with x-ray equipment from New Paltz to New Orleans and back to New York. The defendant's actions included subjecting him to "ionizing radiation, "weaponizing surveillance equipment" against him, looking at his brain through a "viewing device," and causing him other harms. (ECF 2 ¶¶ 111, 120, 128.) However, a "[p]laintiff's beliefs − however strongly he may hold them − are not facts." *Morren v. New York Univ.*, No. 20-CV-10802, 2022 WL 1666918, at *18 (S.D.N.Y. Apr. 29, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 1665013 (S.D.N.Y. May 25, 2022). Plaintiff provides no factual basis for his assertions that he was victim of a broad conspiracy perpetrated by the Doe couple, federal immigration agents, and their proxies. *See Lefkowitz v. John Wiley & Sons, Inc.*, No. 13-CV-6414, 2014 WL 2619815, at *10 (S.D.N.Y. June 2, 2014) (complaint must set forth facts showing basis for information and belief); *Johnson v. Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 266 (W.D.N.Y. 2010) (even where necessary evidence is in "exclusive control of the defendant, . . . plaintiff must still set forth the factual basis for that belief").

The Court finds that Plaintiff does not provide any plausible factual support for his claims and that they rise to the level of the irrational. *See Livingston*, 141 F.3d at 437. Plaintiff has provided the court with a narrative full of details of what he believes − that he is a victim of a broad conspiracy perpetrated by Defendants with the initial goal of his deportation, and later to deprive him of his rights. Despite all of the details provided, Plaintiff has pleaded no factual predicate in support of his assertions. Plaintiff's allegations amount to conclusory claims and

suspicions that are not plausible and must be dismissed as frivolous. *See Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (holding that "the district court did not err in *sua sponte* dismissing the complaint as frivolous," based on the plaintiff's allegations that he had "been the subject of 24-hour, multi-jurisdictional surveillance by federal 'fusion centers' and the New York State Intelligence Center, which put a 'digital marker' on him in order to collect his personal data and harass him."); *Khalil v. United States*, No. 17-CV-2652, 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018) (dismissing complaint where "[p]laintiff allege[d] a broad conspiracy involving surveillance of and interference with his life by the United States and various government actors" because his allegations were "irrational and wholly incredible").

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiff's complaint does not suggest that he is in possession of facts that would cure the identified deficiencies. *See Gallop*, 642 F.3d at 369 (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188, 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend and dismisses the action as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

## CONCLUSION

Plaintiff's complaint is dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). All other pending matters in this case are terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this case.

SO ORDERED.

Dated:   August 28, 2023
         New York, New York

                                           /s/ Laura Taylor Swain
                                           LAURA TAYLOR SWAIN
                                           Chief United States District Judge